Our first case and last case, by the way, this afternoon is People v Harlem Mohr. And that's case number 4-160-685-4. The appellant, we have Julia Boyd and Elizabeth Butler. And you're not arguing? I'm not arguing. And for the apple leaf, David Manchin. Thank you. Thank you. May it please the court, counsel. My name is Julia Boyd, along with Elizabeth Butler. And I represent Harlem Mohr, who is the appellant in this case. Your Honours, Mr. Mohr was deprived of a fair trial due to the overwhelming prejudice caused by thousands of instances of other crimes evidence which were admitted in his case. Specifically, other crimes evidence of goodbye hugs. In this case, there was a huge volume of other crimes evidence which was admitted. The state at trial argued and placed the witnesses on the stand to say that in 2002, these girls were introduced to their grandfather. And that they had contact with him until approximately 2013. He then said that, the state argued and the witnesses testified, that they would see the grandfather every weekend, and on each occasion there would be one of these goodbye hugs. And that we then did calculations, which we have presented to your Honours, of 2,080 instances of other crimes evidence. And these are conservative numbers. Because what we did was, we looked at just the goodbye hugs that occurred on the weekends. And just the time period from 2002 until 2008. And we had four complaining witnesses in this case, each of whom only testified about one count. And then there was a fifth sister, whose entire evidence was other crimes. And if we looked at that time period, 2002 to 2008, it was approximately, at 52 weekends a year, 416 occurrences, then times by the five girls. Now, this is conservative, because we didn't look at the fact that, in addition, there was testimony from the girls that holidays, the entire summer, as well as for three of the girls, Emily, Jenny, and Megan, what they did was, after they finished high school, they went to the Keokuk, Missouri area, and they went there for nursing school. And there they would voluntarily go and see grandpa approximately three times a week. So you have thousands of instances here of other crimes evidence that was introduced. As such, this is analogous to the Cardamone case, which is the only case that really deals with a volume of other crimes evidence, as what we see here. Can we start with the proposition that some of the evidence would have been admissible, and we're only talking about volume? Or are we talking about the evidence shouldn't have been admissible, even if it was only 100 times? Well, Your Honor, there's an additional issue on our case of the fact that we don't think it was admissible because the trial court was not given a meaningful opportunity to evaluate that evidence by means of how this actual evidence was admitted. But certainly the primary thing here is this volume of evidence that came in. That's where the prejudice really is. Well, if you're talking about volume, what better way is there to show propensity and pattern? Well, it's interesting in this case, Your Honor. There were four sisters that were each alleging the same thing. So by virtue of the fact that there were four sisters and each one was alleging this, there was propensity evidence just by virtue of the four counts with the four witnesses who testified together. So there was certainly a much less prejudicial way in which this could come through. So are you saying that there are multiple victims? Yes. That propensity evidence should be limited just to the fact that there are multiple victims? No, certainly additional evidence could come through if the court was able and given facts and able to consider and determine that there was factual similarity. But the predominant thing that we see here, and I think the Cardamone case talked about the fact that in circumstances where you do have multiple complaining witnesses, the fact that there are multiple complaining witnesses shows propensity just right there. So what we have here is these thousands of instances, and we would say based on Cardamone that was one of the things that's prejudicial. And specifically when we look at this, the prejudice comes because here this other crimes evidence became the focus of the trial. If we look at the opening argument, the State, again, laid out how each witness met Grandpa in 2002, that they would go every weekend, and that there was this goodbye hug that occurred every weekend. The State then argued that the girls would have to stretch their minds to go back and search their memories to find out what the charged Bloomington offenses were, the specifically charged conduct. So in the opening statement, it is the other crimes evidence that's the focus. The State doesn't even talk about the charged conduct. Then you have each of these four complaining witnesses plus their sister Megan, and the State went through the same litany and routine. They focused on those weekend visits, how they met Grandpa, they would go every weekend, and then they went to the summer holidays. And then for the girls that were there and went, Emily, Jennifer, and Megan, how they went there after school. After high school they moved closer to the area and they would see Grandpa three times a week. The State then would talk briefly about Illinois conduct, and then would talk about goodbye hugs in Illinois, which occurred as well, and then finish up with the most recent goodbye hugs that occurred in Iowa or Missouri. So the focus here of this trial was on these goodbye hugs. Was that focus or just chronology? It was focus. It was absolutely the focus of the trial. If we look, and I will get to some of the quantity of the amount of evidence that was given, and again, let's remember here, with each of these girls it was one count, but there was this volume of this other crimes evidence that was presented. And Your Honors, in the case of William Brown that came from this district in 2001, that was something that the court looked at. In the Brown case there were 12 witnesses. There were two instances there, one that occurred in 1999 and one that occurred in 1998. And six of the 12 witnesses testified about this 98 uncharged incident. And this court then said, no, this became a focus of the trial. This became a mini trial within that trial, and because of that, that was inappropriate. Again, what we have is if we look at the, and this was something Your Honor was talking about, the excessive number, now, they're each charged, there's one count for each of the four girls. But the amount of other crimes evidence that was presented in the form of testimony was so much in excess of this. With regards to Alexa, she offered 10 times more testimony regarding the other crimes evidence than she did regarding the charged conduct. Courtney, five times as much. Jennifer, twice as much. Emily, five times as much. And Megan, her entire, this was 100% other crimes evidence. And so what we see with this is that in relation to that one count, there's this huge volume that this jury is presented with, this huge volume of information and other crimes evidence, and this was just hugely prejudicial. Now, under the Cardamone case, the mere possibility that this could have confused the jury, the mere possibility is something that allows for a reversal because it is so prejudicial. And in this case, Your Honors, we have more than the mere possibility of jury confusion. What we have here is a jury question that demonstrates there was actual confusion. The jury wanted to know, are we supposed to look at the Iowa, Missouri, or the Illinois conduct? That is something where we see here that there is actual confusion, which is greater than that where there was a mere possibility in Cardamone. In addition, so this is the other thing. You have this huge volume, and it's uncontested. The State, in its brief, talks about the fact on page 22 and page 33. They talk about the sheer numbers and the volume that was presented in this case. I don't think that that's a contested issue. But when we look at this, this large volume is given to the jury. However, the trial court did not place any limits on that, the amount of that other crimes evidence. I think the appellate courts in Illinois are in consensus. If we look at Boyd, Nunley, even Perez, this case cited by the State, that once it's found that this evidence is admissible, the trial court is required to limit that evidence. And it should be limited and tailored to illuminate solely the purpose for which it was admitted, be it propensity, modus operandi, whatever. And it's incumbent on the court to make sure that it is narrowly provided so that we don't have it become the focus of the evidence, so that it doesn't lead to a trial within the trial. That did not happen here. There were no limits by the trial court on the use of this evidence. If we look at Perez, which is the case which is cited by the State, in Perez, one other crimes witness testified to approximately 20 instances. But Justice Jorgensen in Perez looked and said, look, there were procedural safeguards in place. That gave her confidence that there was, in this jury's verdict, so that she could see the jury would not be confused. And the sorts of procedural safeguards in Perez that we saw was what the judge did was he said to the prosecutor, the trial court said, Mr. Prosecutor, choose your top two or three incidents. He limited it. In addition, the prosecutor, in his closing argument, said he wanted to make it crystal clear to the jury. He explained, this is the charged conduct. This is the other crimes evidence. And this is the purpose for which you can use this. Was there a request for a similar instruction by counsel? We did not request any instruction in our case. However, Your Honors, I do believe based on that Brown case, as well as People v. Johnson, this court can consider the jury instruction based on either prejudicial error, plain error, or cumulative error, which is really what we're talking about here. I think in the William Brown case, which is your 2001 case, the court has said that that propensity instruction is imperative because of the importance of making sure that this jury is not confused. So that the importance of giving them an accurate instruction is such an important thing so that we know that they don't misconstrue and misapply the evidence either to bolster weak testimony or, as they said in Cardamone, there's so much testimony of other crimes. If he didn't, he must have done something. That's what they talk about there. And in this case, we don't have any of those limits. At no time was this jury instructed what the other crimes evidence was, what it could be used for. There were no limitations placed on this at all. And the consensus of the appellate courts is for a just reason because if limits are not placed, it does become the focus of the trial. You do have that trial within a trial. So this is something that happened in this case. And so you have this massive volume. You have it. It's so disproportionately more evidence over the one charged offense for each witness. And then there's no explanation with regards to how it should be used or limiting it in any way. This is going to lead to jury confusion. And that's what, in the Brown case, the Fourth District talked about is the fact that to have confidence in that verdict, that this man's guilt or innocence is decided on the evidence on the charged offense alone, you just can't have that when you have the volume and the focus of the evidence. The other issue that we have in this case is the manner in which this evidence came forward. Mr. Moore was deprived of a fair trial because of how this evidence was admitted. The trial court here couldn't conduct a reasonable and meaningful analysis because he didn't have all the facts. At the hearing, the 7.3 pretrial hearing, the state, in their amended brief, had laid out, okay, this is the other kind of evidence we seek to admit. But there were no specific facts provided regarding what the charged offense was. And this was something the judge had given the state an opportunity to come in and amend because he had said, the trial court said, I don't have any facts here in which to do a meaningful analysis. And here, even in the amended brief and at the hearing on the 7.3 motion, the judge said, I don't have any facts on the charged conduct. The state, the judge at the trial court was then, it was unreasonable for him then, at the oral argument on the 7.3 hearing, to rely on the state's Wolf the Cuff response that, oh yeah, with regards to the charged conduct, goodbye hugs were involved. Why was this unreasonable? At that same hearing, the prosecutor said and conceded that he didn't know what the facts were pertaining to the charged conduct. So it was logically impossible for this court to conduct a meaningful analysis by relying on an Wolf the Cuff comment, which then turns out to be incorrect. When this evidence is presented at trial, the charged conduct then did not, in fact, include other, these goodbye hugs. The defendant arrives at the trial and is unfairly surprised. There were no goodbye hugs involved in the charged conduct. This was an issue that greatly concerned. It wasn't the hugs that was relevant, was it? It was the fondling, the touching. It was the fondling and touching during the goodbye hugs. And wasn't that similar to the conduct that was charged, fondling and touching? Your Honor, certainly if we're going to look just at fondling and touching, and I would say under the Wolf's case, the pure touching, if you're just going to talk about touching, then they're supposed to have more specificity in Wolf's rather than just the mere description of the touching. But here again, the fundamental problem is this huge, overwhelming mass of evidence that came in and confused the jury. And this is something that really concerned the trial judge. The trial judge at the sentencing, Suess Bonte, entered a 60-day stay of the mitimus so that the defendant could apply to this court for an appeal bond because he wanted this court to be able to consider these issues. The trial court went to extensive trouble to lay out a record in both his written orders and then in the oral argument in his statements on the record. And he said he was given pause and troubled by two particular issues, both of which involved the pretrial hearings. The first was the bill of particular issue. And at the bill of particular hearing, the charged conduct was over a term of years, four to six years. The state had said, we don't have any more specifics. So the court had denied the motion because there were apparently no more specifics to provide. However, at trial, there were specifics provided, specific instances and family occasions where things occurred. The second instance that really concerned the trial court was this issue of the other crimes evidence. He went to length to explain and create a record for your honors to say, this was admitted because I relied on this representation that then turned out to be different from what was presented at trial. And this provided and gave the judge substantial cause. If we look at this, this is a case also where we couldn't consider the admission of this huge amount of evidence as harmless error. The other crimes evidence was a material factor in the conviction of Mr. Moore. And the sheer mass of evidence that we have is so prejudicial, he was deprived of a fair trial. If we look at the absence, if this other evidence had not come in, the state's case and evidence on these four disparate counts was not overwhelming. They contained, as I said, each girl, there were four girls that testified about instances that had occurred eight to ten years prior. Each girl provided very vague testimony on that. And it's a very interesting case because the charged and the uncharged conduct, all of this occurred in public, allegedly. All of this occurred at large family gatherings when everyone was present. Yet, in both the charged and the uncharged conduct, none, no one saw any of the girls touched at any time. Particularly if we looked at the charged conduct, the detective testified that none of the girls ever told him that they saw any other girl touched. So there was no corroboration, not even by one complaining witness of another complaining witness's allegations. There's no physical evidence. There's nothing else that was there. This was the classic situation of one person's word versus the other, the complaining witness versus the defendant who denied that. And it becomes incredibly prejudicial, and I think the cases support this. Cardamone supports this as well, that when it's an uncorroborated offense where it's one person's word. Ms. Boyd, we're out of time, but you will have rebuttal. Mr. Manchin. Thank you very much, Your Honor. Good afternoon, Your Honor. May it please the Court, Counsel. In this case, the question before this Court is whether the trial court abused its discretion in admitting the evidence under 115-7.3. The abuse of discretion standard is what the trial court's decision is to be affirmed unless it's arbitrary or no reasonable person would agree with the trial court's decision. In this case, the trial court did conduct a thorough and meaningful and knowledgeable discussion of the need for the admissibility of the evidence. He was not sandbagged or misled by the prosecutor's reference at the pretrial hearing that the charges involved goodbye hugs because the charges did, in fact, involve goodbye hugs. The victims testified to goodbye hugs happening in Bloomington as well as specific other instances where the defendant had touched them inappropriately in a situation that was not a goodbye hug. Those goodbye hugs in Bloomington would by themselves support the charges as they're charged in this case. So there's no misleading of the trial court at the pretrial hearing. At that pretrial hearing, the judge was aware that the defendant was only accused of fondling these four victims. The prosecutor filed a listing of over a dozen different incidents or types of evidence he was seeking to admit. The trial court limited this prosecutor's presentation to just the goodbye hug evidence and excluded anything else. Excluded evidence of him being in bed with the children, excluded evidence of the use of sex toys, excluded evidence of the wood gathering where he would warm his hands on the girls' breasts. So to say that the trial court did not conduct a meaningful analysis and was not applying the law in this case is simply not supported by the record. The trial court made a careful consideration of the evidence that the state was going to present and limited the state to that evidence. This evidence of that on every time the defendant saw him, the defendant would molest or would fondle these girls was relevant and probative. As far as the probative value, I think this court hit the nail on the head in this Deaver decision which was decided prior to the statute. It's 580 North East 2nd at 1379 is the quote. But they say the defendant's unnatural depraved conduct regardless of the relationship tends to prove that he did in fact commit the crimes that were charged. That is the exact purpose that the statute has been adopted for, to show propensity based upon other sex offenses. So the claim of prejudice has been turned on its head under the statute. Under common law regarding other crimes as evidence, there is a presumption that the evidence should be excluded unless it was for some specific purpose. Now the statute says it comes in in sex offenses unless unduly prejudicial. And in this case, despite the speculative claims that there was testimony as to thousands of incidents, the prejudice is not there. This is a case where the defendant himself relied upon the volume of the other crimes evidence as part of his defense. Well, but as they argued, he's left with that. He's got to deal with the evidence that he knows is coming in in front of the jury based on the judge's ruling. So can you really argue that, well, he relied on it, isn't that just part of what you do in your defense counsel and you find out that you're going to be stuck with having to deal with a multitude of incidents? I think it bears into the calculus as to whether or not the trial court was correct that the fact that the nature of the defendant's defense would bear upon just how prejudicial was this. The defense in this case was that this whole thing was a conspiracy on the part of the grandchildren because they were angry at their mom and therefore they got together and fabricated these charges of molestation over the course of several years. Given that theory, evidence of a longstanding history of being molested really goes to the heart of the defendant's claim. If the children have maintained a good relationship with him despite this fondling, how much weight should be given to this theory that, okay, they made it all up because they were angry at mom? We have another question here. It is clear that the victims and the fifth granddaughter were probably allowed to testify as to some other sexual abuse on the part of the defendant. Case law is clear that even before the statute, other crimes with the same victim was admissible to show intent, to show the circumstance of the offense, to show the nature of the relationship and to remove the danger that the victim's credibility would be attacked by the fact that they only referred to one incident when there's been many. In this case, the sheer number of the incidents, again, goes to the credibility of each victim's testimony that on this particular holiday, this is what happened. It goes to how well they can remember when did this happen, where did this happen because of the sheer number of times it happened that made it impossible for them to pin down a specific particular instance any more fully than they did. So the question then becomes, given that this evidence was admissible, where do you draw the line? Do you draw the line, okay, you can only bring in the Illinois evidence or do you bring in the evidence only in Missouri and Iowa? Do you limit it to a particular year? Where do you limit, given that scenario, and this is different from Cardamone, relied upon the defendant. Each of the witnesses had testified in specific detail as to the defendant's conduct at other occasions, that conduct which was somewhat different than the charges involved. It was a gymnastic coach accused of fondling 14 and then the 15th one testified, and the trial court said that given the fact that there was 100 witnesses called with multiple witnesses testifying regarding the other, if I recall in that case, there's actually testimony in addition to the victim showing the proof that the earlier other incident occurred. This is just simply a testimony that every time I saw the defendant, he fondled me in the throat. I think that that is a lot less prejudicial in terms of numbers as drawn by the defendant than here, than the express testimony that on these five specific occasions, these five specific acts took place, multiplied by 15 witnesses saying that that is a lot different than Cardamone. What would you say to counsel's argument that the jury was confused and submitted the question about, well, what are we supposed to do with this Iowa and Missouri stuff? Well, any confusion that was there was cleared up by the instruction that was given at the defendant's request. That they were just, as far as these charges, they were just to consider the incidents in Illinois. That instruction, or that answer, was the answer that the defendant requested? Yes. Oh, okay. I had overlooked that. That was the, I don't know if it was the one they requested or the one that they agreed to, saying, yeah, that's the correct answer to the question. That you're to just consider the... The judge's response, wasn't it, that just referred to the bill of indictment? Wasn't it something like that? Let me see if I can find that. Which I presume would have had the charges as having occurred in Illinois. Yeah, the instruction was, the bill of indictment alleges that the alleged acts occurred in the state of Illinois. That is, you're correct, that is what the jury instruction was given. And that was, and it was the defendant's request that the instruction be given. So any confusion regarding out-of-state, in-state acts was cleared up by that instruction, saying the charges are for Illinois, not Iowa and Missouri. But it also suggests the question wouldn't have been asked, but for the fact that the jury heard lots of evidence in three different states. Yeah, but again, given the factual circumstance of this case, where the relationship between the parties, the action of the defendant referring to what happens in Iowa and Missouri as proof that there's nothing going on, you really could not avoid the reference to Iowa and Missouri in the circumstance of this case, where it all hung together. And as far as volume goes, I think, I believe it was the Walston case that's cited in the brief, where they're talking about the amount of ammunition the defendant gives the state for impeachment. And when he gives the state the ammunition, there's no error in the state using that ammunition. I think that that is apropos in this situation, where we do just have general testimony that every time, this is a paraphrase, but every time I saw the defendant, he would give me a goodbye hug in which he would fondle my breasts. Again, I think the trial court's decision here was not an abuse of discretion. The trial court was where the law was pointing to the type of evidence the state wanted to present. The statute does not require express testimony, affidavits, documents, police reports, or anything like that to be given to the court at the hearing. It just says that a summary of the witness's testimony is proper. That is what the court had here in the state's response, with the list of a dozen or more areas he wanted to bring out as other crimes evidence. Defense counsel had the opportunity to flesh out that evidence, or to flesh out the nature of the charges, to call the witnesses themselves if they wanted to, or to present police reports or whatever else, if they thought more evidence was needed. What obligation do they have? The claim on appeal is that the trial court did not have enough information. My point is simply, did not have enough information regarding the other crimes evidence to make a valid decision. My point is, the defendant never objected to the lack of detail as to the other crimes evidence, and never presented additional detail as the other crimes evidence. I took the argument to be that how could the court conduct a meaningful analysis if the state wasn't even able to identify the charged offenses with specificity at the time he was supposed to be doing the analysis? How can it be meaningful if you don't even know what the charged evidence is in deciding what the propensity evidence is? Well, you know the charged evidence is fondling of the victim's breasts. But that's what's charged. The lack of precise detail that the fondling took place in the TV while I was watching the movie. That kind of detail at that preliminary hearing I don't think is needed in order to make the comparison between, okay, the state is charging that he fondled his granddaughter. The state wants to present X, Y, Z. Okay, the only evidence that the defendant is offering in X, Y, Z that matches the charge of fondling is this evidence of fondling in goodbye hugs. Anything else, the trial court excludes. So whatever lack of detail there was at that hearing, the trial court matched up the other crimes evidence, fondling, with the evidence of fondling in goodbye hugs. So to say that there was not a meaningful analysis or meaningful hearing because of ineffective assistance of the state's attorney, this simply does not follow. The trial court had sufficient evidence and information to make the decision. And his remarks at both hearings and his remarks in his written order and his post-mortem report, both of those were not meaningful. But the evidence that was presented in his written order showed that the trial court was well aware of his obligation to weigh the admissibility of this evidence. And I think that the decision that he reached was a reasonable one, given the nature of these proceedings, where it was not specific detailed testimony as to 2,500, 3,500 different instances. And I don't think that there was a single statement, every time I saw him, he would molest me. I think that that is an entirely different situation to say that, okay, you can only say that every time he saw me in the year 2005, he would slightly molest me. Particularly where we have here, where there's an allegation that the children had made a report of offense against the children. That was disregarded or ignored in the whole scenario. Again, that bears to how much comes in or whether it comes in. So I submit that the trial court's decision was not an abuse of discretion. Thank you, Your Honors. Thank you. Ms. Boyd, do you have any rebuttal? Your Honors, we're not saying here that the judge didn't know what the law was. Your Honor was absolutely correct. What we're saying is he didn't have any facts, so he couldn't make a meaningful decision because he did not have those facts. The second issue, counsel said, because he excluded certain conduct and said it doesn't come in at all, that was the limitation. That's not what we're arguing. Boyd and Nunley talk about the fact that once they decide certain evidence is admissible, that evidence that is admitted must be limited, so that it's only given in enough detail to support the reason for which it was admitted, either propensity or modus operandi, whatever. So in this case, there is no limitation there. The state has not indicated, and they concede there were no limitations at the trial. Let me ask a question. When this case goes to trial, do I know, as prosecutor, that part of your defense will be, this is fabricated, and it may arise out of family discord and a divorce? Difficult to know what the prosecutor would have known, because he apparently didn't know what the specific charge of conduct was. Well, now, that was a good answer. I mean, was it anticipated? Judge, all I can say is when it comes out, as your Honor said, we had to defend against what we had to defend against. I'm not criticizing that. I'm saying that if that is the defendant's posture, then doesn't other crimes evidence than in this case have to be considered? If it involves a time period before the discord, before the divorce, before family problems arose, doesn't that evidence become more essential in terms of propensity and similarity and so forth than it would if that other crime's evidence was only evidence regarding about the time that there was family discord? I don't know if I've asked that very well, but chronology. We've got abuse beginning here, allegedly. It's other crime's evidence. Later, we have family discord and a divorce. And one of the ideas will be, this only came to light now. Well, you start thinking about, wait a minute, the girls are suggesting that it was happening all the way back in the day. All the way back there. So if they're going to fabricate it, maybe they would fabricate only when they're adolescents or only closer to the time of the motive to lie. It could be true that it could be supported for that reason. However, again, here, because of the huge volume that came in, you can't get away from the fact that there was this huge volume and there are no limitations or instructions to this jury regarding what they could use it for. I do, I know I have limited time, just want to address the issue of that jury question, because I think it is so important, Your Honor. They did ask the question, which indicates that they were confused. Did it apply to Illinois, Missouri, or Iowa? And we did not request that answer, but it is true we did not object to that answer. However, Your Honors, under that William Brown case, you can look at it because of the importance of the issue and leading to the jury confusion. Because it didn't clear up the problem. Because in Illinois, there was also goodbye hugs and other crimes evidence. By virtue of the judge just instructing them and saying, it's Illinois conduct, does not clear up the issue because there was also other crimes conduct in Illinois. What should have happened was, as Your Honor said, in the Brown case, a propensity instruction is so important. That's what should have happened, but it didn't. And he's deprived of a fair trial because you've got this jury who's confused by that issue. I think my time is up? It's not up until it goes red, but I have a feeling it's going to happen. With regards to the, we don't have the burden. At that hearing, the judge should have denied the motion for admission of the other crimes evidence. That's what should have happened. If no specifics were given with regards to the charged conduct to allow the judge to make the decision, it was unreasonable that the state didn't, they had the burden. We don't. The judge, and we argued this at that hearing. There are no facts, judge. You can't make this decision. He should have denied that motion. That is what should have happened there. I think Walston and Deavers are distinguishable. Thank you very much, Your Honor. Thank you to both of you for your arguments. The case is submitted, and the court is going to stand in recess for a second. Justice Kinnick has something to say. It has nothing to do with the case, but my natural curiosity is such that I would like to know the derivation of your speech pattern and accent. I'm from South Africa, Your Honor. Thank you.